NORTH CAROLINA        FILED        IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
GUILFORD COUNTY     2022 APR 29 P 3: 23     22 CvS 4585

GUILFORD CO., C.S.C.
BY _____

ROXIE A. STRICKLAND,  )
Plaintiff, )
)
v. ) **COMPLAINT**
)
PALMETTO SOLAR, LLC, CURRENT )
RENEWABLES ENGINEERING, and )
ARASH ZANDIEH, In his Official and )
Individual Capacities, Jointly and Severally, )
Defendants.

    NOW COMES Plaintiff Roxie A. Strickland, by and through her counsel of record, complaining of Defendants Palmetto Solar, LLC, Current Renewables Engineering, and Arash Zandieh, in his official and individual capacities, all jointly and severally, and Plaintiff alleges, avers, and says the following in support:

## PARTIES

1. Plaintiff Roxie A. Strickland ("Ms. Strickland") is a citizen and resident of Guilford County, North Carolina and has been for at least six (6) months preceding the institution of this action and prior to the acts complained of herein. At all times alleged herein, Ms. Strickland was a consumer of the installation services as well as the actual material for the photovoltaic system and/or energy storage ("solar panels") product installed on the roof of her residence located at 4207 Green Point Drive, Greensboro, North Carolina, 27407 ("Residence").

2. Defendant Palmetto Solar, LLC ("Palmetto") is a foreign limited liability company organized and existing under the laws of the State of Delaware with its principal office located at 1505 King Street, Ext., Suite 114, Charleston, South Carolina, 29405. At all times alleged herein, Palmetto engaged in the business of selling and installing solar panel systems designed for installation on residential rooves in, among other states, North Carolina.

3. Defendant Current Renewables Engineering, Inc. ("CR Engineering") with its principal office located at 1960 Chicago Avenue, Suite D15, Riverside, California, 92507. At all times alleged herein, CR Engineering engaged in the business of providing engineering services, including field observations to evaluate existing roof system integrity, for solar panel installation for residential consumers in, among other states, North Carolina.

4. Defendant Arash Zandieh ("Mr. Zandieh") is a civil engineer licensed in the State of California under license number 82118 and is also a licensed engineer in the State of North Carolina under license number 050296. At all times alleged herein, Mr. Zandieh was an

employee of CR Engineering which was providing engineering services in the form of evaluation of an existing roof structure for Ms. Strickland's residence located in Greensboro, North Carolina by and through his North Carolina license. True and accurate copies of records of Mr. Zandieh's California and North Carolina licensure are attached hereto, collectively, as *Exhibit 1*.

5. CR Engineering and Mr. Zandieh may also be referred to herein collectively as "Certifying Engineers."

## JURISDICTION

6. The North Carolina General Court of Justice, in the Guilford County Superior Court Division, has jurisdiction of this matter pursuant to N.C. Gen. Stat. § 1-76(1) which requires injuries to real property to be tried in the county in which the subject of the action accrued and is situated. N.C. Gen. Stat. § 1-76 (1951).

7. Pursuant to pervasive and well-established case law, houses are considered part of real property. Dep't of Transportation v. Adams Outdoor Advert. of Charlotte Ltd. P'ship, 370 N.C. 101, 804 S.E.2d 486 (2017); see also, Black's Law Dictionary 574, 1096, 1137 (5th ed. 1979); Ballentine's Law Dictionary 480, 1059 (3d ed. 1969). See also 1 Thompson on Real Property §§ 6, 55 (Grimes ed. 1980). The Plaintiff's roof in this case is clearly part of the house.

8. Pursuant to N.C. Gen. Stat. § 1-15, a six-year statute of limitations applies to any actions based upon or arising out of the defective or unsafe condition of an improvement to real property, including, but not limited to: (1) breach of contract; (2) negligent construction or repair of an improvement to real property; (3) damages for injuries to real property; (4) damages for economic or monetary loss; (5) any other action in contract or tort or otherwise; or (6) actions against any person furnishing materials or who performs or furnishes the design, plans, specifications, surveying, supervision, testing, or observation of construction or construction of an improvement to real property or repair to an improvement to real property. N.C. Gen. Stat. § 1-15 (2009). The defective or unsafe condition regarding improvement of the Plaintiff's roof accrued at the completion of the installation on June 3, 2021.

9. To the extent that this Court may determine that a lesser statute of limitations period applies, Plaintiff asserts that claims for negligence, breach of contract, and property damage may be brought within three (3) years of the act complained of. N.C. Gen. Stat. § 1-50. The causes of action in this matter have accrued within the three-year statute of limitation for negligence both on the date of the installation of the solar panels on which was completed on June 3, 2021 after passing the final building and electrical inspection.

10. Pursuant to N.C. Gen. Stat. § 1-15(c), any cause of action for malpractice out of the performance of or failure to perform professional services accrues at the time of the last

2

act of the defendant giving rise to the cause of action: Provided that whenever there is economic or monetary loss or a defect in or damage to property which originates under circumstances making the injury, loss, defect, or damage not readily apparent to the Plaintiff at the time of its origin, suit must be commenced within one (1) year from the date the discovery is made if the discovery two or more years after the occurrence of the last act of the defendant giving rise to the cause of action. In this matter, the Plaintiff discovered the damage within one (1) year and is filing suit prior to the expiration of that one-year limitation regarding professional services rendered by CR Engineering and Mr. Zandieh. N.C. Gen Stat. § 1-15 (2009)

11. All Defendants either reside in or have their principal offices located outside the State of North Carolina. However, because all of the Defendants agreed to engage in services related to the improvement of real property in North Carolina, and causing damage to that real property, entered into contracts for the improvement of real property in North Carolina, with the contract submitting to governance under North Carolina law, furnished materials for the improvements to real property in North Carolina, and Mr. Zandieh is a licensed professional engineer in the State of North Carolina, all Defendants have submitted to the jurisdiction of North Carolina and have met the minimum contacts for this Court to exercise personal jurisdiction over Defendants. (See McGee v. International Life Ins. Co., 355 U.S. 220, 223, 78 S. Ct. 199, 201, 2 L.Ed.2d 223, 226 (1957) (Where the Court said: "It is sufficient for purposes of due process that the suit (is) based on a contract which (has) substantial connection with (the forum) State."); Chadbourn, Inc. v. Katz,; Byrum v. Register's Truck & Equip. Co., 32 N.C. App. 135, 231 S.E.2d 39 (1977). It is essential that "there be some act by which the defendant purposefully avails (himself) of the privilege of conducting activities within the forum State . . . ." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958).). All Defendants in this matter have purposefully engaged in such acts and have availed themselves of the privilege of conducting activities within this State.

12. As such, and as outlined herein, this Court has jurisdiction over the subject matter and the parties herein.

## BACKGROUND

13. On or about March 29, 2021, Ms. Strickland entered into a Solar Installation Agreement ("Agreement") with Palmetto for Palmetto to furnish and design, procure, construct, install, test, and interconnect a solar panel system onto the existing roof of her residence. (Agreement, p. 1). A true and accurate copy of the Agreement is attached hereto and incorporated herein by reference as ***Exhibit 2***.

14. On or about March 29, 2021, Ms. Strickland granted authorization to Palmetto and its subcontractors to act as agents for the express purpose of applying for and obtaining electrical, building, and other permits required by the City of Greensboro for installation

3

of the solar panels at her Residence. A true and accurate copy of the "Homeowner's Authorization" granting that authority is attached hereto and incorporated herein by reference as *Exhibit 3*.

15. On or about March 29, 2021, Ms. Strickland and her husband, Bobby Strickland, entered into a 25-year Loanpal Agreement in the amount of $43,911.00 to finance the costs of the solar panel installation by Palmetto. A true and accurate copy of the Loanpal Agreement is attached hereto and incorporated herein by reference as *Exhibit 4*. This was clearly a long-term investment entered into by Ms. Strickland and her husband.

16. On or about April 2, 2021, CR Engineering provided a certification through Mr. Zandieh that a field review determined the existing roof framing for Ms. Strickland's Residence to be sufficient to withstand the purported load anticipated by the installation of the solar panels based on structural capacity calculations consistent with the applicable building codes. Specifically, the certification states as follows: "**ROOF 1**: adequate to support the imposed loads. Therefore, no structural upgrades are required." A true and accurate copy of that Certification is attached hereto and incorporated herein by reference as *Exhibit 5*.

17. At all times alleged herein prior to the installation of the solar panel system, the Residence roof did not leak nor were any leaks or other issues that might affect the integrity of the roof system for the solar panel installation noted by any of the Defendants which would be contrary to the Certification. The Certification impliedly appears to indicate that the Mr. Zandieh performed the field inspection both by its wording and the placement of his North Carolina engineering seal. However, as stated hereinabove, Mr. Zandieh resides in California, and therefore, the Certification is misleading and field inspections may not have been performed by a licensed engineer.

18. On or about April 26, 2021, Palmetto submitted the solar panel system engineered drawings and specifications ("Engineered Drawings") to the City of Greensboro Building Inspections and obtained a building permit ("Building Permit") for installation of the solar panel system. True and accurate copies of the Engineered Drawings and a record of the Building Inspections Permit are attached hereto and incorporated herein by reference, respectively, as *Exhibit 6* and *Exhibit 7*.

19. On or about May 7, 2021, Thompson and Son Energy obtained an electrical permit ("Electrical Permit") regarding the installation of the solar panel system. A true and accurate copy of the Electrical Permit is attached hereto and incorporated herein by reference as *Exhibit 8*.

20. On or about June 3, 2021, final approved inspections were issued for both the Building and Electrical Permits. True and accurate copies of those final inspection records from the City of Greensboro are attached hereto and incorporated herein by reference, collectively, as *Exhibit 9*.

4

21. On or about September 24, 2021, Ms. Strickland began to notice leaks on the inside of her Residence. She contacted Palmetto by phone to inform them of the leaks inside her Residence so that it could send the installers back out to evaluate the roof leak against installation of the solar panel system.

22. On or about September 28, 2021, Ms. Strickland made a follow-up call to Palmetto to inquire about the leak evaluation. Stacy Duck of Palmetto ("Ms. Duck") sent an email to Ron Cates, Robert Mariani, and Customer Care about the status of Ms. Strickland's phone call and leak evaluation.

23. Although installers did go to the Residence to caulk a roof vent, they indicated that the vent was not causing her leak. However, the installers did admit to Ms. Duck that the installers did admit that at the time of the install, they did feel a soft spot in the roof, but did not inform Ms. Strickland (and impliedly did not cease the installation). A true and accurate copy of that September 28, 2021 email is attached hereto and incorporated herein by reference as *Exhibit 10*.

24. On December 6, 2021, David Rogers of Aurora Pro Services ("Mr. Rogers"), who specializes in roofing renovations, inspected Ms. Strickland's roof specifically for a leak in the kitchen area, but inspecting the entire roof per Aurora's company policy. Pursuant to that inspection, Mr. Rogers found the following:

    a. One of the roof pipe boots in the attic was not properly seated and was causing the leak in the kitchen;

    b. The entire roof deck was splintering, near collapse, as evidenced by buckling plywood;

    c. The weight of the solar panels compromised the integrity of the plywood deck of the roof;

    d. Water damage was a direct result of the splintering of the roof deck due to the weight of the solar panel system;

    e. Solar panels should only be installed on structurally sound wood;

    f. But for the installation of the solar panels, the roof would have lasted an additional year or two;

    g. He had to replace 41 sheets of OSB plywood on the roof. The average OSB plywood replacement on any home is usually only 1-3 sheets; and

    h. The solar panels were a direct cause of the wood and water damage to Ms. Strickland's roof.

    A true and accurate copy of Mr. Roger's documentation dated January 4, 2022 is attached hereto and incorporated herein by reference as *Exhibit 11*.

25. On December 8, 2021, Palmetto had still failed to have someone remove and/or supervise the removal of the solar panel system. A true and accurate copy of the December 2021 email chain is attached hereto and incorporated herein by reference as *Exhibit 12*.

26. On or about December 13, 2021, Aurora Pro Services removed the entire solar panel system, wiring, piping, and boxes from the roof of the Residence at a cost of $4,871.02 to Ms. Strickland. A true and accurate copy of the respective invoice is attached hereto and incorporated herein by reference as ***Exhibit 13***.

27. On or about December 13, 2021, Aurora Pro Services repaired Ms. Strickland's roof, including labor and materials, at a cost of $20,880.27. A true and accurate copy of the respective invoice is attached hereto and incorporated herein by reference as ***Exhibit 14***.

28. All Defendants' conduct as outlined herein constitutes respective acts of negligence, gross negligence, breach of contract, breach of warranty of workmanship, unfair and deceptive trade practices, professional malpractice, negligent misrepresentation, fraud, and *respondeat superior*, jointly and severally.

29. As a result of the Defendants' conduct as described hereinabove, Plaintiff is entitled to consequential and compensatory damages, including, but not limited to reimbursement for any amounts due to Loanpay (now Green Leaf) and reimbursement for the costs of the roof repair performed by Aurora Pro Services, in an amount in excess of twenty-five thousand dollars and 00/100 cents ($25,000.00), treble damages pursuant to N.C. Gen. Stat. 75-1, punitive damages pursuant to N.C. Gen. Stat. Ch. 1D, attorney's fees pursuant to N.C. Gen. Stat. 6-20, 6-21.1, 75-16, and any other relevant North Carolina law.

## **FIRST CAUSE OF ACTION: NEGLIGENCE**
As to All Defendants

30. The Plaintiff incorporates herein by reference Paragraphs 1 through 29, all other allegations contained throughout this Complaint, and all Exhibits attached to this Complaint as though fully set forth.

31. Palmetto owed a duty of care to the Plaintiff to confirm the integrity of the roof prior to installation of the solar panel system and to install the solar panel system in a workmanlike manner. Palmetto breached that duty of care by proceeding with the install despite knowing that the roof was not fit for installation, and that breach is the proximate and actual cause of damages to Plaintiff resulting in severe roof damage as evidenced by the cost of the repairs and Mr. Roger's report.

32. Palmetto also acted wantonly with conscious and reckless disregard for the rights and safety of Ms. Strickland when it proceeded with the roof installation when its employees:

    a. Knowingly proceeding with an unsafe installation of the solar panel system when there were aware of the soft spot in the roof;

    b. Knowing and admitting there was a soft spot in the roof and not disclosing that fact to Ms. Strickland until after the installation was complete and roof leaks were ensuing; and

6

c. Knowingly providing misinformation to the certifying engineers, or acting in concert with in order to secure this solar panel installation.

33. As a result of not disclosing the failed integrity of the roof prior to installation and proceeding with the unsafe installation of the solar panel system when it knew the load was too great for the roof to bear, Palmetto failed to exercise due and reasonable care to prevent the roof leaks and structural damage when it knew or should have known the weight of the solar panel system could cause serious damage to the roof structure and result in personal or property damage.

34. The failure of the roof of the Residence, upon information and belief, was caused by Palmetto's failure to disclose the lack of integrity of the roof, i.e. the soft spot, and proceeding to install the unbearable load of the solar panel system onto Plaintiff's existing roof. So, this Defendant knew or could have known and should have known the condition of the roof, but proceeded with installation anyway.

35. The failure of the roof of the Residence, upon information and belief, was caused by Defendants CR Engineering and Mr. Zandieh failing to properly inspect or provide for proper inspection of the Plaintiff's roof prior to certifying that the roof was structurally sound. So, these Defendants either knew, or could have known and should have known the substandard condition of the roof for installing the solar panel system, but certified the condition of the roof anyway.

36. Palmetto sold, delivered, and installed the solar panel system and charged the Plaintiff for labor and material and otherwise placed the same into the stream of commerce when it knew or in the exercise of reasonable care should have known that said the solar panel system was incapable of providing for the Plaintiff's reasonable needs when installed in the manner effected by its employees.

37. Palmetto knew or should have known that the roof of the Residence was not structurally sound due to the soft spot in the subject roof reported by its installers and by the field inspection performed as part of its Agreement.

38. Palmetto, by entering into an Agreement with the Plaintiff and promising to "be responsible solely for direct damage caused" to the roof "arising directly from the installation and/or caused by the installer or its agents", Palmetto owes a contractual and legal duty of care and liability for the damage to the roof after constructing, installing, and operating the solar panel system when it knew that the roof was not fit for installation, construction, and operation of the solar panel system.. (Ex. 2, p. 2, ¶ 3(h).

39. Palmetto, by entering into an Agreement with the Plaintiff and promising to perform a "thorough physical inspection" of the roof and "other due diligence to confirm the suitability" of the roof "for the construction, installation, and operation" of the solar panel system, Palmetto owed a contractual and legal duty of care to ensure the integrity of the

7

roof prior to constructing, installing, and operating the solar panel system. (Ex. 2, p. 2, ¶ 3(i).

40. Palmetto breached its duty of care to the Plaintiff as described in Paragraphs 36 through 41 of this Complaint and Palmetto's negligence is the proximate and actual cause of Plaintiff's damages.

41. CR Engineering and Mr. Zandieh negligently approved the roof for the solar panel system installation by certifying the field observations not properly conducted nor properly supervised. As the certifying engineers for this solar panel installation on the Residence, CR Engineering and Mr. Zandieh owed a duty of care to the Plaintiff to ensure their calculations were performed with accurate and reliable field data from the field observations. In fact, CR Engineering and Mr. Zandieh are subject to N.C. Gen. Stat. Ch. §§ 89C-18.1 and 24 and have a professional duty to supervise any unlicensed individuals who are providing information upon which they will rely in the furnishing of engineering. N.C. Gen. Stat. § 89C-25.1 (1998). Further, 21 N.C. Admin. Code 56.0701 prohibits engineers from affixing their seal to any document not prepared under the licensee's direct supervisory control nor may the engineer contract with a non-licensed individual to provider those professional services. 21 N.C. Admin. Code 56.0701(c)(3)

42. CR Engineering and Mr. Zandieh have breached their duty of care by certifying the roof as "adequate to support the imposed loads" with "no structural upgrades . . . required" when they knew, should have known, and could have known that the roof was in fact not adequate to support the load imposed by the solar panel installation.

43. The negligent conduct of CR Engineering and Mr. Zandieh are the proximate and actual cause of the Plaintiff's damages.

44. Ms. Strickland has been required to expend monies to effect repairs with regard to the defective installation of the solar panel system beyond a reasonable amount and due to the negligent conduct of all Defendants; and the value of the solar panel system does not conform to its value as anticipated by the Plaintiff who is still under a contractual obligation for the purchase of a system that is not fit for her Residence.

45. As a result of the Defendants' negligent conduct, Ms. Strickland is entitled to consequential and compensatory damages, including, but not limited to reimbursement for any amounts due to Loanpay (now Green Leaf) and reimbursement for the costs of the roof repair performed by Aurora Pro Services, in an amount in excess of twenty-five thousand dollars and 00/100 cents ($25,000.00), and attorney's fees pursuant to N.C. Gen. Stat. 6-20, 6-21.1, and any other relevant North Carolina law.

8

## SECOND CAUSE OF ACTION: GROSS NEGLIGENCE
As to All Defendants

46. The Plaintiff incorporates herein by reference Paragraphs 1 through 45, all other allegations contained throughout this Complaint, and all Exhibits attached to this Complaint as though fully set forth.

47. Gross negligence has been defined as "wanton conduct done with conscious or reckless disregard for the rights and safety of others." Toomer v. Garrett, 155 N.C. App. 462, 482, 574 S.E.2d 76, 92 (2002). Aside from allegations of wanton conduct, a claim for gross negligence requires that plaintiff plead facts on each of the elements of negligence, including duty, causation, proximate cause, and damages. Id.

48. For the purposes of gross negligence, Paragraphs 31 through 45 above are incorporated herein as the well-pleaded, specific, and particular facts on each of the elements of negligence, including duty, causation, proximate cause, and damages as is required to establish a claim for gross negligence. Clayton v. Branson, 170 N.C. App. 438, 442-43, 613 S.E.2d 259, 263 (2005).

49. In addition to the aforementioned allegations, Palmetto has engaged in wanton conduct done with conscious or reckless disregard for the rights and safety of others by installing the solar panel system on the Residence while possessing knowledge that the roof was not stable enough to withstand the system load as evidenced by the soft spots encountered during the initial inspection and/or installation.

50. In addition to the aforementioned allegations, CR Engineering and Mr. Zandieh have engaged in wanton conduct done with conscious or reckless disregard for the rights and safety of others by certifying installation of the solar panel system onto a roof which he knew or could have known and should have known was inadequate for the installation of the solar panels; by failing to directly supervise non-licensed individuals who provided field observations directly to CR Engineering and Mr. Zandieh for load calculations; by failing to confirm the accuracy of the data obtained during the field observations to protect the public, including Ms. Strickland, as required by N.C. Gen. Stat. Ch. 89C and 21 N.C. Admin. Code 56.0701.

51. The acts, omissions, and failures of Defendants demonstrate a conscious or intentional disregard or indifference for the rights and safety of others, including Ms. Strickland and her husband who reside in the Residence where the roof was failing when Defendants knew or should have known there was a reasonable likelihood that personal injuries, property damage, or death would occur, and as such constituted willful or wanton conduct – or gross negligence. Est. of Long by & through Long v. Fowler, 270 N.C. App. 241, 253, 841 S.E.2d 290, 300 (2020), aff'd, 2021-NCSC-81, 378 N.C. 138, 861 S.E.2d 686.

9

52. As a result of the Defendants' negligent conduct, Ms. Strickland is entitled to consequential and compensatory damages, including, but not limited to reimbursement for any amounts due to Loanpay (now Green Leaf) and reimbursement for the costs of the roof repair performed by Aurora Pro Services, in an amount in excess of twenty-five thousand dollars and 00/100 cents ($25,000.00), and attorney's fees pursuant to N.C. Gen. Stat. 6-20, 6-21.1, and any other relevant North Carolina law.

## THIRD CAUSE OF ACTION: BREACH OF CONTRACT
As to Defendant Palmetto Solar, LLC

53. The Plaintiff incorporates herein by reference Paragraphs 1 through 52, all other allegations contained throughout this Complaint, and all Exhibits attached to this Complaint as though fully set forth.

54. The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract. Poor v. Hill, 138 N.C. App. 19, 530 S.E.2d 838 (2000). Our appellate courts have also instructed that a properly plead claim for breach of contract also demonstrates: (1) existence of a contract; (2) specific provisions breached; (3) facts and circumstances surrounding the breach; and the amount of resulting damages. Cantrell v. Woodhill Enterprises, Inc., 273 N.C. 490, 160 S.E.2d 476 (1968).

55. On March 29, 2021, Palmetto and Ms. Strickland entered into a valid Agreement, inter alia, for a solar panel system to be "designed, procured, constructed, installed, tested, and interconnected" onto the roof of the Residence for the price of $43,911.00. Ms. Strickland also signed on this same date an authorization for Palmetto and its subcontractors to apply for and obtain electrical, building and other permits as required by the City of Greensboro for the installation of the solar panel system at the Residence. The Agreement is signed by both Ms. Strickland and an authorized signatory for Palmetto.

56. As a direct result of the terms of the Agreement, on March 29, 2021, Ms. Strickland entered into a Loanpal Agreement to finance the cost of the solar panel system and its design, procurement, construction, installation, testing, and interconnection.

57. Palmetto has breached the Agreement to the detriment of Ms. Strickland by engaging in the following acts, omissions, and failures, which include, but are not limited to:

   a. Failing to conduct a proper field observation, inspection, and other due diligence to confirm the integrity of the roof and its adequacy to withstand the load presented by the solar panel installation. (Ex. 2, p. 2, ¶ 3(i)); (Ex. 5)

   b. Failing to report the soft spots in the roof to Ms. Strickland and/or the Certifying Engineers so that the integrity of the roof could be properly ascertained giving Ms. Strickland the opportunity to improve the construction of the roof prior to Palmetto installing the solar panel system. (Ex. 10)

10

c. Concealing the condition of the roof instead of reporting the true condition of the roof and its lack of suitability for installation and failing to immediately notify Ms. Strickland of any roof repairs that needed to be conducted prior to installation of the solar panel system. (Ex. 2, p. 2, ¶ 3(i)) and ¶ 5; (Ex. 10)

   d. Installing the solar panel system onto the roof when it knew the roof was not suitability to sustain the load presented. (Ex. 2, p. 2, ¶ 3(i)); (Ex. 10)

   e. Failing to take responsibility for the damages caused to the roof by the faulty installation which was not designed to be installed on unsuitable rooves. (Ex. 2, p. 2, ¶ 3(h)).

   f. Failing to honor all Workmanship Warranty provisions as outlined in the Agreement (Ex. 2, Exhibit A)

58. Palmetto's acts, omissions, and failures constitute an unlawful breach of the Agreement although Palmetto was fully capable of fulfilling its obligations under the Agreement when it failed to do so.

59. Ms. Strickland has complied with all terms of the Agreement.

60. As a result of Palmetto's breach of the Agreement, Ms. Strickland was forced to hire another contractor, Auroro Pro Services, to repair the roof damage caused by the installation of the solar panel system onto a roof that could not sustain such load. The reasonable cost of such corrective repair work was twenty thousand eight hundred eighty dollars and 27/100 Cents ($20,880.27).

61. As a result of Palmetto's breach of the Agreement, Plaintiff is entitled to consequential and compensatory damages, including, but not limited to reimbursement for any amounts due to Loanpay (now Green Leaf) and reimbursement for the costs of the roof repair performed by Aurora Pro Services, in an amount in excess of twenty-five thousand dollars and 00/100 cents ($25,000.00), and attorney's fees pursuant to N.C. Gen. Stat. 6-20, 6-21.1, and any other relevant North Carolina law.

**FOURTH CAUSE OF ACTION: BREACH OF WARRANTY (OF WORKMANSHIP)**
Implied and Express Warranty of Workmanlike Construction
As to Defendant Palmetto Solar, LLC

62. The Plaintiff incorporates herein by reference Paragraphs 1 through 61, all other allegations contained throughout this Complaint, and all Exhibits attached to this Complaint as though fully set forth.

63. "[W]here the cause of action is a failure to construct in a workmanlike manner and with the material contracted for, plaintiff's pleading should allege wherein the workmanship was faulty or the material furnished by defendant was not such as the contract required." Cantrell v. Woodhill Enterprises, Inc., 273 N.C. App. At 497, 160 S.E.2d at 481.

11

64. When the parties' contract embodies an warranty or guarantee, this constitutes an express warranty. Coates v. Niblock Development Corp., 161 N.C. App. 515, 588 S.E. 2d 492 (2003).

65. The warranty of workmanlike construction in North Carolina is normally alleged as an implied warranty and implicates the quality of the work performed by a contractor. Lunsden v. Lawing, 107 N.C. App. 493, 421, S.E. 2d 594 (1992); see also Cantrell, supra.

66. Under well-established North Carolina law, a contractor has an obligation to perform its work in a workmanlike manner. See Moss v. Best Knitting Mills, 190 N.C. 644, 130 S.E. 635 (1925); Kenney v. Medlin Const. & Realty Co., 68 N.C. App. 339, 315 S.E.2d 311 (1984). This means that the work shall be done in a reasonably skillful manner, as that of a skilled workman and as is customary in the industry.

67. The implied warranty of workmanlike construction arises by operation of law. Griffin v. Wheeler-Leonard & Co., 290 N.C. 185, 225 S.E.2d 557 (1976).

68. Palmetto engaged in the following acts which constitute breach of the implied warranty of workmanlike construction and its workmanship warranty:

   a. Failure to properly inspect the roof as agreed upon by the parties to ensure the integrity of the roof prior to installation of the solar panel system; (Ex. 2, p. 2, ¶ 3(i))

   b. Failure to immediately disclose to Ms. Strickland and the Certifying Engineers the condition of the roof as required by the parties' Agreement and its duties; (Ex. 2, p. 2, ¶ 3(i) and ¶ 5)

   c. Acting in concert with the Certifying Engineers to deceive Ms. Strickland so that Palmetto could proceed with the installation of the solar panel system despite the unsuitable condition of the roof; (Ex. 2, p. 2, ¶ 3(i) and ¶ 5)

   d. Installing the solar panel system onto the roof when it knew the roof was not suitability to sustain the load presented. (Ex. 2, p. 2, ¶ 3(i)); (Ex. 10);

   e. Failing to take responsibility for the damages caused to the roof by the faulty installation which was not designed to be installed on unsuitable rooves. (Ex. 2, p. 2, ¶ 3(h)); and

   f. Failing to honor all Workmanship Warranty provisions as outlined in the Agreement (Ex. 2, Exhibit A) and as outlined herein this Complaint.

69. As a result of Palmetto's breach of both implied and express warranties of workmanlike construction and workmanship, Plaintiff is entitled to consequential damages and consequential and compensatory damages, including, but not limited to reimbursement for any amounts due to Loanpay (now Green Leaf) and reimbursement for the costs of the roof

12

repair performed by Aurora Pro Services, in an amount in excess of twenty-five thousand dollars and 00/100 cents ($25,000.00), and attorney's fees pursuant to N.C. Gen. Stat. 6-20, 6-21.1, and any other relevant North Carolina law.

## FIFTH CAUSE OF ACTION: UNFAIR AND DECEPTIVE TRADE PRACTICES
### N.C. Gen. Stat. Ch 75
As to All Defendants

70. The Plaintiff incorporates herein by reference Paragraphs 1 through 69, all other allegations contained throughout this Complaint, and all Exhibits attached to this Complaint as though fully set forth.

71. The elements of an unfair or deceptive trade practice are: (1) an unfair or deceptive act or practice by the defendant, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff. Heron Bay Acquisition, LLC v. United Metal Finishing, Inc., 245 N.C. App. 378, 382, 781 S.E.2d 889, 892 (2016). In addition, actions for unfair or deceptive trade practices are distinct from actions for breach of contract and must allege some act of deception proximately resulting in some adverse impact or actual injury to a plaintiff. Id.

72. Palmetto engaged in unfair and deceptive acts or practices as follows:

    a. Failure to properly inspect the roof as agreed upon by the parties to ensure the integrity of the roof prior to installation of the solar panel system; (Ex. 2, p. 2, ¶ 3(i))

    b. Failure to immediately disclose to Ms. Strickland and the Certifying Engineers the condition of the roof as required by the parties' Agreement and its duties; (Ex. 2, p. 2, ¶ 3(i) and ¶ 5)

    c. Acting in concert with the Certifying Engineers to deceive Ms. Strickland so that Palmetto could proceed with the installation of the solar panel system despite the unsuitable condition of the roof; (Ex. 2, p. 2, ¶ 3(i) and ¶ 5)

    d. Installing the solar panel system onto the roof when it knew the roof was not suitability to sustain the load presented. (Ex. 2, p. 2, ¶ 3(i)); (Ex. 10);

    e. Failing to take responsibility for the damages caused to the roof by the faulty installation which was not designed to be installed on unsuitable rooves. (Ex. 2, p. 2, ¶ 3(h)); and

    f. Failing to honor all Workmanship Warranty provisions as outlined in the Agreement (Ex. 2, Exhibit A) and as outlined herein this Paragraph 72 and also alleged throughout this Complaint.

13

73. Palmetto's acts, omissions, and failures proximately caused the actual structural damage to Ms. Strickland's roof, including roof leaks and damage caused by the roof leaks, damage to the roof deck (OSB panels), damage to the roof framing caused by the solar panel load which was too heavy for the roof structure.

74. CR Engineering and Mr. Zandieh engaged in unfair and deceptive acts or practices as follows:

    a. Certifying installation of the solar panel system onto a roof which they knew or could have known and should have known was inadequate for the installation of the solar panels;

    b. Failing to directly supervise all individuals, including any non-licensed individuals, who provided field observations directly to CR Engineering and Mr. Zandieh for load calculations; and

    c. Failing to confirm the accuracy of the data obtained during the field observations to protect the public, including Ms. Strickland, as required by N.C. Gen. Stat. Ch. 89C and 21 N.C. Admin. Code 56.0701.

75. The conduct exhibited by the Defendants constitute unfair and deceptive trade acts or practices and are also egregious and aggravating factors supporting this Court's determination that such conduct rises to the level of unfair, deceptive, egregious, and aggravating.

76. As a result of the Defendants' unfair and deceptive trade acts or practices, and the presence of egregious conduct and aggravating circumstances, Plaintiff is entitled to consequential damages and consequential and compensatory damages, including, but not limited to reimbursement for any amounts due to Loanpay (now Green Leaf) and reimbursement for the costs of the roof repair performed by Aurora Pro Services, in an amount in excess of twenty-five thousand dollars and 00/100 cents ($25,000.00), and attorney's fees pursuant to N.C. Gen. Stat. 6-20, 6-21.1, 75-16.1, and any other relevant North Carolina law.

**SIXTH CAUSE OF ACTION: PROFESSIONAL NEGLIGENCE/MALPRACTICE**
As to Defendants Current Renewables Engineering and Arash Zandieh
N.C. Gen. Stat. 15(c) (2009)

77. The Plaintiff incorporates herein by reference Paragraphs 1 through 76, all other allegations contained throughout this Complaint, and all Exhibits attached to this Complaint as though fully set forth.

78. To establish a prima facie case of professional negligence or professional malpractice, a plaintiff must show: (1) the nature of defendant's profession; (2) defendant's duty to conform to a certain standard of conduct; and (3) a breach of the duty proximately caused injury to the plaintiff. Rainey v. St. Lawrence Homes, Inc., 174 N.C. App. 611, 621 S.E.2d 217 (2005).

14

79. The Certifying Engineers in this matter are engaged in the practice of providing professional engineering services, in this case civil engineering services, which require professional education, the passing of a state exam, and the issuance of a license by a state board regulating that profession.

80. Upon information and belief, at the time of the inception of the project to prepare for the inspection of the Residence and design, construction, installation, testing, and operation of the solar panel system, Mr. Zandieh was an employee of CR Engineering, was licensed in both California and North Carolina as a professional engineer and was qualified to provide engineering services for Ms. Strickland's solar panel installation, including determining the suitability of the roof for such installation.

81. Upon information and belief, at the time of the inception of the project to prepare for the inspection of the Residence and design, construction, installation, testing, and operation of the solar panel system, CR Engineering was registered with the California Secretary of State as an engineering corporation and was qualified to provide engineering services for Ms. Strickland's solar panel installation, including determining the suitability of the roof for such installation.

82. As mandated by N.C. Gen. Stat. Ch. 89C and 21 N.C. Admin. Code 56.0701, the Certifying Engineers are under a duty to conform to the rules of professional conduct and standards of the engineering industry for the protection of the public and public safety.

83. The Certifying Engineers breached their professional duties to Ms. Strickland as follows:

    a. Certifying installation of the solar panel system onto a roof which they knew or could have known and should have known was inadequate for the installation of the solar panels;

    b. Failing to directly supervise all individuals, including any non-licensed individuals, who provided field observations directly to CR Engineering and Mr. Zandieh for load calculations;

    c. Failing to confirm the accuracy of the data obtained during the field observations to protect the public, including Ms. Strickland, as required by N.C. Gen. Stat. Ch. 89C and 21 N.C. Admin. Code 56.0701;

84. But for the Certifying Engineers' representation that field observations and their calculations confirmed that the roof was suitable for installation of the solar panel system, the Plaintiff would not have sustained damage to her roof which began to break under the weight of the solar panel system.

85. The Certifying Engineers' breach of duty to the Plaintiff was the proximate and actual cause of the damages sustained by Plaintiff.

15

86. As a result of the Defendants' unfair and deceptive trade acts or practices, and the presence of egregious conduct and aggravating circumstances, Plaintiff is entitled to consequential damages and consequential and compensatory damages, including, but not limited to reimbursement for any amounts due to Loanpay (now Green Leaf) and reimbursement for the costs of the roof repair performed by Aurora Pro Services, in an amount in excess of twenty-five thousand dollars and 00/100 cents ($25,000.00), and attorney's fees pursuant to N.C. Gen. Stat. 6-20, 6-21.1, and any other relevant North Carolina law.

### SEVENTH CAUSE OF ACTION: RESPONDEAT SUPERIOR
As to Current Renewables Engineering, Inc.

87. The Plaintiff incorporates herein by reference Paragraphs 1 through 86, all other allegations contained throughout this Complaint, and all Exhibits attached to this Complaint as though fully set forth.

88. If an employee is negligent while acting in the course of employment and such negligence is the proximate cause of injury to another, the employer is liable in damages under the doctrine of respondeat superior, notwithstanding the fact that the employer, himself, exercised due care in the supervision and direction of the employee, the employee's violation of instructions being no defense to the employer. Estes v. Comstock Homebuilding Companies, Inc., 195 N.C. App. 536, 673 S.E.2d 399 (2009).

89. The elements necessary to invoke the doctrine of respondeat superior are: (1) the plaintiff was injured by the wrongdoer; (2) the relation of master and servant, employer and employee, or principal and agent, existed between the one sought to be charged and the alleged tortfeasor; (3) the neglect or wrong of the servant, employee, or agent was done in the course of his employment or in the scope of his authority; and (4) the servant, employee, or agent was engaged in the work of the master, employer, or principal, and was about the business of his superior at the time of the injury. Id.

90. The certification issued by the Certifying Engineers on April 2, 2021 discloses CR Engineering letterhead which lists CR Engineering as a Professional Engineer with an email address of info@currentrenewableseng.com. The letterhead reveals the same address for CR Engineering that is registered with the California Secretary of State. See *Exhibit 5*

91. The same certification was sealed by Mr. Zandieh using his North Carolina professional engineer seal and indicating that his license in North Carolina was not expired at the time the certification was issued on April 2, 2021. See *Exhibit 5*

92. Pursuant to *Exhibit 5*, Mr. Zandieh was a servant, employee, or agent of CR Engineering acting within the course of his employment and within the scope of his authority to certify plans within the jurisdiction of North Carolina cities, towns, and counties.

16

93. Pursuant to *Exhibit 5*, Mr. Zandieh was engaged in the work of CR Engineering when he applied his seal to the certification indicating that the Plaintiff's roof was adequate to support the imposed loads of the solar panel system and that he was not acting in some private matter of his own or outside the legitimate scope of his employment.

94. All acts of negligence, gross negligence, and unfair and deceptive trade acts or practices as alleged in this Complaint against Mr. Zandieh are incorporated herein by reference to this Paragraph 94 to establish the grounds for CR Engineering to answer for Mr. Zandieh's conduct.

95. Because CR Engineer is the master, employer, or principle for Mr. Zandieh who is a servant, employee, or agent on its behalf, the Plaintiff is entitled to consequential and compensatory damages, including, but not limited to reimbursement for any amounts due to Loanpay (now Green Leaf) and reimbursement for the costs of the roof repair performed by Aurora Pro Services, in an amount in excess of twenty-five thousand dollars and 00/100 cents ($25,000.00), and attorney's fees pursuant to N.C. Gen. Stat. 6-20, 6-21.1, and any other relevant North Carolina law.

WHEREFORE, Plaintiff Roxie Strickland prays this Court that:

1. This Verified Complaint be taken as an affidavit upon which this Court may base its orders in this cause;
2. The Court enter respective judgment against the Defendants for negligence, gross negligence, breach of contract, breach of warranty of workmanship, unfair and deceptive trade practices, professional malpractice, and respondeat superior;
3. The Court enter judgment in favor of Plaintiff for consequential and compensatory damages in amount in excess of twenty-five thousand dollars and 00/100 cents (>$25,000.00);
4. The costs of this action be taxed to Defendants, jointly and severally, including the Plaintiff's reasonable attorney's fees pursuant to N.C. Gen. Stat. § 6-20, 6-21.1, 75-16.1, and any other relevant North Carolina law; and
5. For such other and further relief as this Court deems just and proper.

Respectfully submitted this the 21 day of April, 2022.

_____
Thomas F. Roupas, Jr.
Roupas Law Firm, PLLC
119 North Greene Street, Suite 100
Greensboro, North Carolina 27401
Phone: (336) 272-7272
Fax:    (336) 275-0999
Email: tr.roupaslaw@yahoo.com